## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| MARCUS SIMS, | : | CRIMINAL NO. |
| Reg. # 60136-019, | : | 1:08-CR-0209-CC-JSA-2 |
| Movant, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 1:12-CV-0252-CC-JSA |
| | : | |
| UNITED STATES OF AMERICA, | : | MOTION TO VACATE |
| Respondent. | : | 28 U.S.C. § 2255 |

### FINAL REPORT AND RECOMMENDATION

This matter is before the Court on Defendant Marcus Sims's ("Defendant" or

"Petitioner") Motion to Vacate, Set Aside or Correct His Sentence Pursuant to Title

28, United States Code, Section 2255 ("Motion") [Doc. 134], and the Response Brief

filed by the United States ("Government") [Doc. 137].[1]   For the reasons discussed

---

[1] Prior to serving as a U.S. Magistrate Judge, the undersigned served as an Assistant U.S. Attorney ("USAO") in the same office that prosecuted Movant, from approximately 2004 through June 1, 2012.  The undersigned served as deputy chief of the economic crime section of the USAO for some of that period.  The undersigned recalls no personal or supervisory involvement over defendant's case.

Although no request for recusal has been made, the undersigned will briefly explain why he has not recused *sua sponte*.  Title 18 U.S.C. § 455(b)(3) requires a judge who previously served in government to recuse only if the judge actually participated in the case. *Mangum v. Hargett*, 67 F.3d 80, 83 (5th Cir. 1995).  In other words, "a judge is not subject to mandatory disqualification based on the mere fact that another lawyer in his prior government office served as an attorney on the matter." *United States v. Champlin*,  388 F. Supp. 2d 1177, 1180 (D. Haw. 2005).

below, the Court finds that Petitioner's Motion is meritless.  Thus, the Court

**RECOMMENDS** that the Motion [Doc. 134] be denied in its entirety.

I.  Background

   A.  Procedural History

   On May 28, 2008, a federal grand jury sitting in this Court returned a seven-

count indictment against Petitioner and his co-defendant, Maurice Jenkins, charging

Petitioner in five of the seven counts as follows:  (1) armed robbery in violation of

18 U.S.C. §§ 2 and 1951 (Count One); (2) using and carrying a firearm during a

crime of violence, in violation of 18 U.S.C. §§ 2 and 924(c) (Count Two); (3)

possession of a firearm by a convicted felon on January 17, 2008, in violation of 18

U.S.C. §§ 2 and 922(g) (Count Three); (4) possession of a stolen firearm, in violation

Several courts have held that "an Assistant United States Attorney is only disqualified from cases on which he or she actually participated." *Id.* (citing *United States v. Ruzzano*, 247 F.3d 688, 695 (7th Cir. 2001) ("As applied to judges who were formerly AUSAs, § 455(b)(3) requires some level of actual participation in a case to trigger disqualification."); *Mangum*, 67 F.3d at 83 (same); *Kendrick v. Carlson*, 995 F.2d 1440, 1444 (8th Cir. 1993) (same).  "[T]he same rule applies to former supervisors in the United States Attorney's office; § 455(b)(3) requires recusal only when the supervisor actually participated in a case."  *Champlin*, 388 F. Supp. 2d at 1181; *United States v. Scholl*, 166 F.3d 964, 977 (9th Cir. 1999); *United States v. Di Pasquale*, 864 F.2d 271, 279 (3d Cir. 1988).  As the undersigned was uninvolved in this case and otherwise perceives no ground for recusal, the Court does not *sua sponte* find that recusal is warranted.

of 18 U.S.C. § 922(j) (Count Four); and (5) possession of a firearm by a convicted felon on May 9, 2008, in violation of 18 U.S.C. § 922(g) (Count Seven).  [Doc. 2]. On February 19, 2009, Petitioner initially entered a plea of guilty to Count Seven. [Docs. 66, 67].  On April 13, 2009, Petitioner pled guilty to Counts Two and Seven. [Doc. 75, 76, 87].  However, on August 13, 2009, Petitioner moved to withdraw his plea to Count Two [Doc. 86], and on September 16, 2009, the Court granted the motion [Doc. 89].  Petitioner proceeded to trial on Counts One, Two, Three, and Four on November 16, 2009 [Docs. 98, 119-123], and on November 18, 2009, a jury found Petitioner guilty on all four counts [Doc. 102].  On February 18, 2010, this Court sentenced Movant to 240 months of imprisonment, consisting of 120 months on each of the Counts One, Three, Four and Seven, to run concurrently, and 120 months on Count Two, to run consecutively to the other counts.  [Docs. 111, 112, 128]. Petitioner appealed, and on September 30, 2010, the Eleventh Circuit affirmed his convictions.  [Docs. 113, 132]; *United States v. Sims*, 398 F. App'x 494 (11th Cir. 2010).  On January 24, 2011, the Supreme Court denied certiorari.  [Doc. 133]; *Sims v. United States*, 131 S. Ct. 1057 (2011).

3

On January 24, 2012, Petitioner filed a timely § 2255 motion, and on March 9, 2012, the Government filed its response to the motion. [Docs. 134, 137].

B. Facts of the Case

1. Offense Conduct - January 17, 2008

Petitioner and his co-defendant, Maurice Jenkins, a long-time friend from his neighborhood, began working together and with others in early 2006 to break into cars in mall or business parking lots to steal whatever they could find of value inside the vehicles. [Doc. 120 at 8-13]. Petitioner and Jenkins would keep some of the stolen items for themselves and would sell some of the stolen items, mainly laptop computers, GPS systems, and firearms. [Doc. 120 at 13-17]. This loose-knit group of break-in artists called themselves "The Merch Boys," for all of the "merchandise" they stole. [Doc. 120 at 18-19].

On January 17, 2008, Jenkins and another member of the group, nicknamed "Weazy," picked up Petitioner in the morning hours to put in "work," the term the group used for their illegal activity. [Doc. 120 at 22-24]. The three men went to the Greenbriar Discount Mall in Atlanta, Georgia, in order to steal items. [*Id.* at 24]. The three men had one or two flathead screwdrivers and a hammer, which they used to break into cars, and firearms. [*Id.* at 24-25]. According to Jenkins, the members of

4

the group always had at least one firearm with them whenever they went to break into cars so that they could protect themselves if confronted by law enforcement, victims, or citizens.  [Doc. 120 at 25-28].

Jenkins testified that Petitioner had, on a previous occasion, been confronted by the owner of a vehicle that he was breaking into, which required Petitioner to shoot at the owner in order to flee the scene.  [Doc. 120 at 27-30].  On January 17, 2008, the three men had two firearms with them, one was a 9 millimeter pistol that belonged to Jenkins and the other was a Smith and Wesson .40 caliber pistol that Petitioner and Jenkins had stolen the night before from a vehicle in a mall parking lot, which Petitioner claimed for his own.  [Doc. 120 at 31-36, 152-153; Doc. 119 at 25-30].

Petitioner stashed the two firearms in the map pockets behind the front car seats as the three men approached the Greenbrier Discount Mall.  [Doc. 120 at 36-37].  When they entered the parking lot, they saw a United Parcel Service ("UPS") truck in front of the mall, with the rear loading door of the truck open, exposing the parcel boxes in the truck, and decided to steal some of the UPS packages instead of breaking into cars.  [Doc. 120 at 37-39].  Petitioner and Jenkins pulled up and parked their car next to the UPS truck, and the two men exited the car - Jenkins from the

driver's seat and Petitioner from the passenger seat - and began to take the packages. [Doc. 120 at 38-39, 184-185]. The two men got two boxes into their vehicle and were going back for more when the UPS driver, who had been inside the back of the UPS truck, appeared and confronted Petitioner and Jenkins. [Doc. 120 at 37-42; Doc. 119 at 35-38].

When the UPS driver confronted them, a "scuffle" for the boxes and to stop the robbery ensued, and Petitioner and Jenkins ran back to their vehicle, which was parked next to the UPS truck, and got into the car. [Doc. 119 at 38, 45, 61, Doc. 120 at 41, 152]. After Petitioner and Jenkins got back into the car, a security guard for the Greenbrier Discount Mall saw the scuffle, arrived to assist the UPS driver, and attempted to open the door to the vehicle. [Doc. 119 at 38, 59-63]. Jenkins leaned back in his seat and retrieved the Smith and Wesson .40 caliber handgun, which belonged to Petitioner, from the back of the car, and shot the security guard several times.[2] [Doc. 120 at 138-41; Doc. 119 at 63-64]. Petitioner and his two cohorts were able to get away in their vehicle, but were only able to hold on to one of the UPS

---

[2]The security guard, Jermaine Carroll, testified that he was shot six times - three in the stomach, two in the leg, and one in the back. [Doc. 119 at 64]. Jenkins testified that he pulled the trigger eight times. [Doc. 120 at 44-45].

boxes in their car, as the other box they had taken fell out of the vehicle as it drove away.  [Doc. 120 at 45-46, 152].

## 2. Offense Conduct - May 9, 2008

On May 9, 2008, at approximately 1 p.m., Petitioner, on his own, broke into a vehicle owned by Andrew Yocom, which was located in the parking lot at All American Containers in Sharpsburg, Georgia, where Yocum was employed.  [Doc. 120 at 162-165, 179].  Yocom saw Petitioner breaking into his vehicle from his office window, and after telling the receptionist to call 911, ran out to the vehicle and confronted Petitioner.  [*Id.* at 165-170].  Petitioner was holding Yocom's handgun, a Taurus .38, which Petitioner had taken from inside Yocom's vehicle.  [Doc. 120 at 165-166].  Petitioner pointed the gun at Yocom, and Yocom and Petitioner then began to wrestle for the gun.  [*Id.* at 165-166; 172-173].  The gun fell to the ground, but Petitioner recovered it, pointed it at Yocom's head, and attempted to fire the gun.  [*Id.* at 173].  Yocom testified that he could see the gun pointed at his head and hear it clicking, which Yocom attributed to the clip not being engaged.  [*Id.* at 173-176].  Yocom confronted Petitioner again and they begin to wrestle, and the gun fell to the ground again, at which point Yocom was able to throw it into nearby bushes and get Petitioner in a headlock. [Doc. 120 at 173-177].  At that point, the police arrived at

7

the scene, handcuffed Petitioner, and placed him in the patrol car.  [*Id.* at 178].  In addition to the guns, Petitioner had also attempted to steal Yocom's GPS device and wallet, which Yocom discovered when he later moved his vehicle and found that the GPS device and wallet were underneath the vehicle.  [*Id.* at 178-179].

While Petitioner was seated in the backseat of the police car, Petitioner slipped out of the handcuffs and attempted to escape. [Doc. 120 at 183].  However, Petitioner was apprehended a short time later.  [*Id.* at 184].

## II. Standard of Review

Under § 2255, individuals sentenced by a federal court can attack the sentence imposed by claiming one of four different grounds:  "(1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise subject to collateral attack."  *Hill v. United States*, 368 U.S. 424, 426-27 (1962); *see generally United States v. Hayman*, 342 U.S. 205 (1952).  "To obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal."  *United States v. Frady*, 456 U.S. 152, 166 (1982).  Movant must establish that the facts surrounding his claim present "exceptional circumstances where the need for the

8

remedy afforded by the writ of habeas corpus is apparent." *Bowen v. Johnston*, 306 U.S. 19, 27 (1939).

This Court may deny § 2255 relief without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; *see Long v. United States*, 883 F.2d 966, 968 (11th Cir. 1989). Under § 2255, however, an evidentiary hearing is required when the Court cannot determine from the record that the prisoner is entitled to no relief. *United States v. Marr*, 856 F.2d 1471, 1472 (10th Cir. 1988). As discussed below, the motion and record of the case conclusively show that Movant is not entitled to relief or to an evidentiary hearing.

III. Discussion

Petitioner's Motion alleges eight grounds for relief under 28 U.S.C. § 2255: (1) Ground One alleges that the Government engaged in prosecutorial misconduct by calling witness Andrew Yocum at trial, to testify about criminal conduct to which the Petitioner had pleaded guilty and therefore was no longer an issue for the jury, *see* Motion [Doc. 134 at 4-5]; (2) Grounds Two and Three allege that the evidence adduced at trial was insufficient to support Petitioner's convictions as to Count One, both as to Petitioner's commission of a robbery (Ground Two) and for aiding and

9

abetting the robbery (Ground Three), because Petitioner argues the evidence only established his intent to steal, not commit the more serious crime of robbery, [*Id.* at 5-6]; (3) Grounds Four and Five argue that Petitioner's counsel was ineffective both at trial and on appeal, [*Id.* at 7-9]; (4) Ground Six alleges that the instructions given to the jury were "fatally" erroneous in that they "made it easier" for the jury to improperly convict Petitioner of robbery when in fact he had no intention to rob and rather only intended to steal, [*Id.* at 9-10]; (5) Ground Seven alleges that the prosecutors knowingly suborned perjury from Petitioner's co-defendant [*Id.* at 11-13]; and (6) Ground Eight alleges that the prosecutors committed misconduct by allegedly "vouching" for the credibility of the cooperating co-defendant in closing argument, [*Id.* at 13-15]. Of these claims, only Grounds Two, Three and Six appear to have been presented on direct appeal.

These claims are meritless and should be dismissed for numerous reasons as discussed below.

### A. Grounds Two, Three and Six Were Presented To, And Rejected By, The Court of Appeals, And Cannot Be Relitigated Here

On direct appeal, Petitioner challenged both the sufficiency of the evidence to support his convictions on Counts One and Two, as well as the district court's denial

10

of his proposed jury instruction as to the distinction between "theft" and "robbery."

The Court of Appeals rejected both arguments and affirmed Petitioner's conviction.

*See United States v. Sims*, 398 F. App'x 494 (11th Cir. 2010).  First, the Court of

Appeals found that "ample evidence supports Sims's convictions," specifically citing

evidence that Petitioner's theft was accomplished with the aid of actual force when

his co-defendant, Jenkins, shot a security guard.  *Id.*  Second, the Court of Appeals

found that the district court's jury instruction as to the elements of the robbery

offense "tracked the language of the statute, conveyed accurately the law, and

distinguished between the offenses of theft and robbery."  *Id.* at 495.[3]  Further, the

_____

[3] The district court instructed the jury as to the elements of robbery under the
Hobbs Act, 18 U.S.C. 1915(a), as follows:

> Ladies and gentlemen of the jury, Title 18, United States Code, Section
> 1951(a), makes it a federal crime or offense for anyone to obtain or take
> the property of another by robbery and in so doing to obstruct, delay or
> affect commerce or the movement of articles in commerce.

> The Defendant may be found guilty of that offense only if all of the
> following facts are proved beyond a reasonable doubt.

> First, that the Defendant knowingly obtained or took the personal property
> of another, and from the presence of another, as charged; second, that the
> Defendant took the property against the victim's will, by means of actual
> or threatened force or violence or fear of injury, whether immediately or
> in the future; and, third, that, as a result of the Defendant's actions,
> commerce, or an item moving in commerce, was delayed, obstructed or

court stated that "[t]he omission of Sims's proposed language did not impair his ability to convey to the jury his defense that he aided and abetted [Jenkins] solely in a scheme to steal property." *Id.*

"Once a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255." *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000).  Thus, having litigated the sufficiency of the evidence and the accuracy of the jury instructions on direct appeal, Petitioner cannot challenge the adverse rulings he received on those subjects under this habeas petition.  Grounds Two, Three and Six must be denied on this basis alone.

Moreover, Petitioner's arguments fail on the merits.  Petitioner is wrong as a matter of law to the extent he argues that the Government in this Hobbs Act case was required to prove, and the jury was required to find, specific intent to rob.  *See United States v. Gray*, 260 F.3d 1267, 1283 (11th Cir. 2001) ("the only *mens rea* required for a Hobbs Act robbery conviction is that the offense be committed knowingly."); *United States v. Thomas*, 8 F.3d 1552, 1562 (11th Cir. 1993) (finding no plain error in jury instruction that did not require proof of specific intent for Hobbs Act robbery,

---

affected in any way or degree.

[Doc. 121 at 77].

12

and explaining that "[t]he Hobbs Act definition of robbery does not seem to require a finding of specific intent whereas at common law robbery required such a finding"). In any event, as the Court of Appeals found in this case, the district court's instructions of law were correct and the evidence adduced at trial was sufficient to support the jury's finding as to each of the elements of robbery under the Hobbs Act.

**B.    Petitioner's Claims of Prosecutorial Misconduct (Grounds One, Seven and Eight) Are Procedurally Barred And, In Any Event, Meritless**

Petitioner argues that the prosecutors engaged in misconduct by introducing prejudicial "other acts" testimony (Ground One), introducing allegedly false testimony by the co-defendant, Jenkins (Ground Seven), and by improperly vouching for Jenkins's credibility (Ground Eight). These claims fail for multiple reasons.

1.    The Misconduct Claims Are Procedurally Barred

The misconduct claims were available to be raised at trial and on appeal, but Petitioner did not raise them. Petitioner is therefore prohibited under the procedural default doctrine from raising them for the first time now.

The procedural default doctrine reflects the "general rule" that "claims not raised on direct appeal may not be raised on collateral review." *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Reed v. Fairley*, 512 U.S. 339, 354 (1994) ("'[T]he

13

general rule is that the writ of habeas corpus will not be allowed to do service for an appeal.'"). To adequately preserve a claim, a Defendant must raise it both before the trial court (whether by motion, objection, or otherwise) and also on direct appeal. *See Murray v. Carrier*, 477 U.S. 478, 490-92 (1986). *United States v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993) (If a defendant "could have raised" the supposed constitutional violation previously, he defaults on the opportunity to pursue the claim for the first time pursuant to § 2255). The procedural bar applies to claims of prosecutorial misconduct, where the claims were available to be raised previously but were not. *See Lynn v. United States*, 365 F.3d 1225, 1234-37 (11th Cir. 2004) (dismissing § 2255 allegations of prosecutorial misconduct and other violations on grounds of procedural default where claims were based in large part on facts previously in the record but were never raised below).

In this case, all of the facts that Petitioner cites in support of his three grounds of prosecutorial misconduct appear clearly in the trial record. It was apparent at trial (a) that the Government was eliciting testimony about Petitioner's commission of another robbery other than the one charged in the case, (b) that the co-defendant, Jenkins, testified in a manner allegedly inconsistent with prior statements to law enforcement, which alleged inconsistency was raised by Petitioner's counsel in cross-

examination of Jenkins, [Doc. 120 at 88-96], and (c) that Government counsel made certain arguments to the jury in support of Jenkins's credibility [Doc. 121 at 20-21, 31-35]. These are the same facts Petitioner cites in support of the instant motion. Yet Petitioner did not seek this relief at trial and did not assert these claims of error in his appeal. Petitioner is procedurally barred from doing so now.

An exception to the procedural bar rule is where a petitioner can show "cause and actual prejudice." *Lynn*, 365 F.3d at 1234 (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)) ("A defendant can avoid a procedural bar only by establishing one of the two exceptions to the procedural default rule. Under the first exception, a defendant must show cause for not raising the claim of error on direct appeal and actual prejudice from the alleged error."). Alternatively, a petitioner can escape the procedural bar rule where he can show that he is actually innocent and that a failure to address the unpreserved claims would result in a fundamental miscarriage of justice. *Lynn*, 365 F.3d at 1234-35 (quoting *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994) ("Under the second exception, a court may allow a defendant to proceed with a § 2255 motion despite his failure to show cause for procedural default if 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'").

15

These exceptions do not apply. Petitioner does not argue that his unpreserved claims should be considered under the actual innocence and fundamental miscarriage of justice standard. That narrow exception to the procedural bar rule is also unavailable under the facts established in this case. The Eleventh Circuit has stated that this standard requires a showing that the alleged errors "probably resulted in the conviction of one who is actually innocent." *Mills*, 36 F.3d at 1055–56 (citing *Murray*, 477 U.S. at 496). Petitioner cannot make that showing here. Petitioner does not dispute that he was part of a scheme to steal from the delivery truck, and several eyewitnesses other than just the cooperator (including the delivery driver and the security guard who attempted to assist) testified. Petitioner in this Motion does not deny the basic facts established at trial but rather asserts an incorrect legal argument as to the elements of robbery under the Hobbs Act. This is not a colorable showing of actual innocence.

As for "cause and actual prejudice," Petitioner does not allege any cause at all for having failed to preserve his claims under Ground One. As for Grounds Seven and Eight, Petitioner argues that his failure to preserve those claims resulted from ineffective assistance of counsel, which is separately alleged as a ground for relief

16

under claims Four and Five.  For the reasons stated in more detail below, Petitioner

fails to establish any deficient performance by counsel or any actual prejudice from

counsel's failure to preserve these arguments.  Petitioner's prosecutorial misconduct

claims remain procedurally barred and therefore they should be dismissed.

### 2.  The Claims Are Meritless And Establish No Prejudice

#### (a)   Claim One

On the merits, Petitioner complains in Ground One as to the admission of

evidence of other wrongful acts.  That reflects an evidentiary determination by the

district court pursuant to Fed. R. Evid. 404(b).  Even if the district court had abused

its considerable discretion in admitting this evidence, which it did not, this would at

most be the sort of non-constitutional trial error that does not give rise to § 2255 relief

absent a fundamental miscarriage of justice.  *See Reed v. Farley*, 512 U.S. 339, 354

(1994) (in order to obtain relief under § 2255 on the basis of nonconstitutional error,

the record must reflect a fundamental defect in the proceedings that inherently results

in a complete miscarriage of justice or an omission inconsistent with the rudimentary

demands of fair procedure).

(b)   <u>Claim Seven</u>

With respect to Ground Seven, Petitioner complains that the prosecution adduced certain testimony from Jenkins that was arguably inconsistent with post-arrest statements Jenkins made to law enforcement.  Specifically, in his post-arrest statements, Jenkins allegedly told the officers that he had previously stolen and possessed the firearm used to shoot the delivery truck driver during the January 17 robbery.  At trial, Jenkins testified that he and the Petitioner had stolen the gun together during a previous crime, and that the Petitioner had asserted possession of the firearm at the time of the January 17 robbery. [Doc. 120 at 32-35].  Petitioner does not contend that the prosecutors withheld the allegedly inconsistent prior statements in discovery.  To the contrary, the record shows that his counsel cross-examined Jenkins on these very points at trial. [*Id.* at 90-93].

The Supreme Court has long held that "it is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." *Napue v. Illinois*, 360 U.S. 264, 269 (1959).  But Petitioner does not sufficiently allege such a violation here, at least not to the "cause and actual prejudice" standard necessary to surmount the procedural bar.

18

First, that a witness testifies contrary to prior statements does not itself establish perjury. *See United States v. Dunnigan*, 507 U.S. 87, 95 (1993) ("A witness testifying under oath or affirmation [commits perjury] if she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory."); *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990) (holding contradictory testimony does not prove perjury); *United States v. Battle*, 264 F. Supp. 2d 1088, 1208-09 (N.D. Ga. 2003) (the fact that a witness's previous testimony is inconsistent with later testimony does not establish perjury or that the prosecutor made knowing use of false testimony). Witnesses–particularly cooperating defendants in criminal cases–sometimes testify in ways that could be seen as contrary to prior statements. This could reflect changes in recollection, an offer of additional detail, a difference in the questions asked, or any number of other things, including, of course, perjury. But a mere arguable contradiction does not itself suggest perjury, much less the Government's knowledge of perjury.

Thus, federal courts generally reject *Napue* claims based on nothing more than a contradiction between a witness's testimony and prior out-of-court statements, at least where (as here) those statements were disclosed to the defense and available for

19

impeachment use at trial.  The courts "cannot presume that the prosecutor knew that the prior [inconsistent] statement was true" but elicited perjured testimony anyway. *United States v. Baker*, 850 F.2d 1365, 1371 (9th Cir. 1988); *United States v. Williams*, 547 F.3d 1187, 1202 n.13 (9th Cir. 2008) ("Although there were inconsistencies in Penate's testimony, there was no evidence that the government knowingly presented false testimony. . . . The inconsistencies in Penate's testimony were argued to the jury.").  Here, all Petitioner points to as proof of perjury are Jenkins's prior allegedly inconsistent statements.[4]  But these statements do not mean that Jenkins's trial testimony was false or that the prosecution team knew it to be false.

Second, all of the facts that Petitioner cites to support his allegation that Jenkins lied were apparently disclosed to Petitioner and used in cross-examination

---

[4] For the purposes of adjudication of this Motion, the Court assumes that Jenkins's trial testimony contradicted his prior statements.  At least in some respects, however, the record is ambiguous on this point.  Jenkins originally stated to the police that he stole the gun that was later used to shoot the delivery truck driver.  He then testified at trial that he and the Petitioner, acting together, stole the gun.  At least in this respect, the testimony reflects the additional of a material detail, rather than an outright, express contradiction.  The jury was entitled to find, and may have found, the additional detail as to Petitioner's involvement to be incredible, and fabricated, because it was not stated originally.  But Jenkins at trial denied any contradiction and the jury was not required to find it to be one.

20

of Jenkins at trial.  Courts have found that a petitioner's knowledge of perjury during trial combined with the ability to present the facts establishing perjury to the jury generally defeats a later § 2255 claim.  *See, e.g., United States v. Biberfeld*, 957 F.2d 98, 104 (3d Cir. 1992); *Brown v. United States*, 556 F.2d 224, 227 (3d Cir. 1977).  This proposition may not always apply but at least on the facts here it must.  To the extent Jenkins's prior inconsistent statements were enough to charge the prosecutors with knowledge of perjury, then the jury necessarily would have also known of the perjury since the prior inconsistent statements were discussed openly at trial.

Third, similarly, Petitioner can establish no actual prejudice.  Again, his counsel was aware of and used the prior inconsistencies to cross-examine and impeach Jenkins at trial.  Moreover, the Government adduced ample evidence of guilt other than just Jenkins's testimony, including testimony by two other eyewitnesses (including the shooting victim), testimony about the Petitioner's own inculpatory statements, and evidence of another robbery that Petitioner had committed.  For all these reasons, there is no reasonable probability of a different result absent the allegedly contradictory testimony.

21

(c)   Ground Eight

Petitioner's Ground Eight–which alleges that the prosecutor improperly vouched for Jenkins's credibility–also fails as a matter of law.

"Ordinarily, it is improper for a prosecutor to bolster a witness's testimony by vouching for that witness's credibility."  *United States v. Bernal-Benitez*, 594 F.3d 1303, 1313 (11th Cir. 2010) (citing *United States v. Hands*, 184 F.3d 1322, 1334 (11th Cir. 1999)).  "The rule against bolstering does not, however, prevent the prosecutor from commenting on a witness's credibility, which can be central to the government's case."  *Id.* (citing *United States v. Hernandez*, 921 F.2d 1569, 1573 (11th Cir. 1991)).

Here, Petitioner first quotes the prosecutor as stating:

The fact of the matter is I anticipate if you let me ask this question he'll testify that he's actually scared of being called a snitch and that that was something that he had to overcome to come testify today, which I submit goes to his credibility in the face of, and rebuts the fact that he's just trying to curry favor when he has to actually overcome this fear of being deemed a snitch when he goes back to Indiana.

[Doc. 120 at 119-120].

A review of the transcript shows that Petitioner is simply factually wrong in his allegation that this constitutes improper vouching.  The cited statements were

22

made in legal argument to the district judge at sidebar, outside the presence of the jury, and related solely to whether the judge should permit a certain line of questioning. [Doc. 120 at 119-120].  This is not improper vouching.

Petitioner then quotes a series of statements that the prosecutor did, in fact, make to the jury in closing argument about Jenkins's credibility. [Motion, Doc. 134 at 14-15].  The prosecutor's arguments in this regard, however, were proper.  The prosecutor argued in favor of Jenkins's credibility based on objective facts in the record and inferences that the prosecutor suggested should be drawn from those facts. For example, the prosecutor argued based on Jenkins's plea agreement obligation to tell the truth, the fact that he surrendered to the police and confessed, and other objective facts that Jenkins's testimony was believable. [Doc. 121 at 31-35].  The prosecutor did not personally vouch for the witness, reference facts outside the record, or otherwise cross the line into improper argument.

### C.   Petitioner's Claims Of Ineffective Assistance of Counsel (Grounds Four and Five) Are Meritless

Petitioner argues that his trial and appellate counsel were ineffective in various ways.  As explained in detail below, Petitioner fails to meet his heavy burden to establish ineffective assistance and his claims must be denied.

23

1.  Legal Standard For Ineffective Assistance of Counsel

The standard for evaluating ineffective assistance of counsel claims was set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Green v. Nelson*, 595 F.3d 1245, 1239 (11th Cir. 2010).  "An ineffective assistance claim has two components:  A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense."  *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland*, 466 U.S. at 687).  To establish deficiency, a petitioner is required to establish that "counsel's representation 'fell below an objective standard of reasonableness.'"  *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688)).  To establish prejudice, a petitioner must prove a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694; *Allen v. Secretary, Fla. Dep't of Corr.*, 611 F.3d 740, 750 (11th Cir. 2010).  The court may "dispose of [the] ineffectiveness [claim] on either of its two grounds."  *Atkins v. Singletary*, 965 F. 2d 952, 959 (11th Cir. 1992); *see Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

24

The *Strickland* standard also applies to claims of ineffective assistance of counsel on appeal. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Temple v. Morton*, No. 06-15061, 2007 WL 2141823, at *2 (11th Cir. July 27, 2007). To succeed on a claim of ineffective assistance of appellate counsel, as on a claim of ineffective assistance of trial counsel, a petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "[A] court must not second-guess counsel's strategy." *Chandler v. United States*, 218 F.3d 1305, 1314 n.14 (11th Cir. 2000).

2. Analysis

None of Petitioner's allegations raise a colorable claim of ineffective assistance of counsel. The record shows that trial counsel pursued various motions on Petitioner's behalf, vigorously cross-examined Jenkins and other witnesses, and made strong arguments to the jury focusing on reasonable theories of defense.

Petitioner argues in Ground Five that his original counsel, Ms. Johnson, failed to file pre-trial motions that would have resulted in dismissal of the armed robbery charge (Count One) to a lesser offense. [Motion, Doc. 134 at 8-9]. Ms. Johnson allegedly advised Petitioner that such a motion would be futile, "because the 'grand jury' signed off on the indictment." [*Id.*]. Counsel's advice in this regard was not

25

ineffective, and if anything appears correct.  Petitioner identifies no basis upon which he was entitled to have the district court dismiss Count One and replace it with a lesser offense.  Counsel's advice against filing this apparently frivolous motion was not ineffective.   Moreover, deciding what motions should be pursued is a quintessential tactical decision.  Although his counsel did not file this particular motion, counsel did file and litigate numerous other motions including a motion to suppress evidence, a motion to sever counts, a motion to preclude the Rule 404(b) "other crimes" evidence, and a motion in limine aimed at restricting the testimony of a government expert.  [Docs. 26, 27, 62, and 64].  Counsel's tactical decision to not also include the frivolous motion requested by Defendant alongside these more viable motions is not subject to second guessing now.

Petitioner also argues in Ground Four that his trial counsel, Ms. Kearns, was ineffective "by failing to raise various substantive claims at my trial and on direct appeal."  Petitioner does not explain what substantive claims he believes should have been asserted but presumably they include the prosecutorial misconduct claims set out in Claims Seven and Eight.  For the reasons explained in detail above, it was not ineffective for counsel to forego making these arguments.

26

With respect to the improper vouching arguments set out in Claim Eight, the prosecutor's statements were not improper.  Therefore, there was no deficiency in counsel's failure to object to these statements.  And there is no prejudice, because Petitioner establishes no likelihood that an objection would have changed the result of his case.

With respect to Jenkins's testimony, counsel had no basis to argue that this testimony was perjurious or that the Government was knowingly suborning perjury.  As explained above, contradictions between a witness's testimony and his prior statements do not in themselves suggest a *Napue* violation.  Any objection that counsel made on this basis would have been futile, and counsel's failure to object or raise this issue on appeal was neither deficient performance nor prejudicial.

Moreover, any decision as to how to use Jenkins's prior inconsistent statements was inherently tactical.  Petitioner suggests that counsel should have used them as a ground to object and to seek to exclude the testimony under *Napue*. But another tactic was to instead wait to cross-examine the witness with his prior inconsistent statements and thereby try to discredit the key Government witness.  Counsel employed the latter tactic, and this was objectively reasonable.  Petitioner may have been better off allowing the Government to center its case around Jenkins, who could

27

be so easily attacked with his prior inconsistencies and motives to lie.  Petitioner may

not have been as able to put the Government's case on trial to the same extent had

Jenkins been excluded, and had the Government been forced to rely on innocent third

party victims and law enforcement officers.  Using the inconsistencies in cross-

examination was a reasonable strategy and, like other tactical decisions, will not be

second-guessed.

Petitioner alleges that Ms. Kearns had "no real defense" planned "to challenge

my co-defendants (Maurice Jenkins) direct testimony."  The Court has reviewed

counsel's cross-examination of Jenkins as well as counsel's closing arguments and

the Court rejects this argument.  The record shows that counsel employed a

reasonably effective cross-examination and made viable arguments to the jury as to

Jenkins's credibility and other aspects of Petitioner's defense.  Counsel clearly

established that Jenkins added key details to his story in between his post-arrest

statements and his testimony at trial.  Counsel established that the new details were

the ones inculpatory to Petitioner, and counsel established facts from which the jury

could infer Jenkins's motivation to point a finger at Petitioner.  Put simply, counsel

engaged in a reasonable effort to impeach Jenkins.  No one can say whether these

efforts actually succeeded, because the jury could have entirely disbelieved Jenkins

28

and yet convicted Petitioner based on other evidence. But the record shows that counsel engaged in a reasonable effort and certainly put forward a "real defense."

In any event, Petitioner cannot just complain as to the lack of a "real defense." To obtain relief, he must show actual prejudice, that is, a reasonable likelihood that some alternative defense or strategy that counsel did not employ would have succeeded. Petitioner does not establish this.

Finally, Petitioner complains that Ms. Kearns made disparaging references to himself, referring to the Petitioner as a "bad kid," and "a convicted felon." [Motion, Doc. 134 at 7]. Viewed in context, this was also a reasonable tactical decision. Counsel's strategy was not to contest the overwhelming evidence showing Petitioner's prior criminal activity and intent to steal from the delivery truck, but rather to focus the jury on whether the Government could prove the specific elements of the much more serious crime of armed robbery. It was in this context that counsel referred to the largely uncontested damaging information about Petitioner and his background. For example, counsel in closing argued:

> Again, these are hard decisions for you to make because you're sitting here thinking, Oh, yeah, wow, we're going to find this kid who's led a pretty worthless life up until now not guilty, he was there to commit theft, he was there for no good, that's enough, that's enough for me.

29

> No, that's not the way the system works. They could have charged him
> with theft, they could have charged him with a federal theft offense,
> interstate shipment, theft of interstate shipment instead of robbery of
> interstate shipment. The Government chose to charge robbery; they have
> the burden of proving robbery.

[Doc. 121 at 40-41].

This was a reasonable theory to argue in closing. The record does not suggest that counsel offered any personal views that Petitioner was a "bad kid" or "led a pretty worthless life." Rather, counsel was simply acknowledging evidence in the record and certain inferences that the jury might have drawn about the Petitioner from that evidence. It likely would have been futile, and may have appeared disingenuous to the jury, to deny, for example, that Petitioner was a prior felon and that he intended to steal from the delivery truck. Thus, counsel quite reasonably conceded these facts–and acknowledged that those facts might lead the jury to dislike Petitioner–but then argued how none of this was relevant to the key legal question of whether or not Petitioner committed robbery. Thus, rather than "misguiding" the jury, [Doc. 134 at 7], counsel's argument was consistent with her reasonable trial strategy. Petitioner fails to show that counsel was ineffective on this or any other ground.

30

IV.  Certificate of Appealability

According to Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts, a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Under 28 U.S.C. § 2253(c)(2), a certificate of appealability shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right."  A prisoner satisfies this standard by demonstrating that reasonable jurists would find that the district court's assessment of his constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable.  *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Petitioner has failed to make a substantial showing of the denial of a constitutional right.  As previously discussed, Petitioner's claims lack merit.  Accordingly, **I RECOMMEND** that a certificate of appealability be **DENIED**.

V.  Conclusion

Based on the foregoing, **IT IS RECOMMENDED** that Petitioner Marcus Sims's motion to vacate sentence [Doc. 134] be **DENIED**.

31

**IT IS FURTHER RECOMMENDED** that a certificate of appealability be **DENIED**.

The Clerk is **DIRECTED** to terminate the referral to the undersigned magistrate judge.

**IT IS SO RECOMMENDED** this 27th day of March, 2013.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE

32